MICHAEL SCHAEFER
9509 Sundial Dr.
Las Vegas, NV 89134
Tel. 702-466-5407
Plaintiff Pro Se



## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| MICHAEL SCHAEFER,<br>Plaintiff<br><br>v.<br><br>BARBARA CEGAVSKY, Secretary of State, et al.,<br>Defendants | Case No. 2:16-cv-4-JAD-VCF<br><br>PLAINTIFF OBJECTION<br>TO MAGISTRATE JUDGE<br>RECOMMENDATION |

COMES NOW Plaintiff, Pro Se, in opposition to Magistrate's Recommendation.

PRELIMINARY: Local Rule lB 3-2 required any objection to this 1/11/16 filing would be due in normal course within fourteen(14)days, for good cause shown the Court granted extension to file any opposition to and including February 29, 2016.

ISSUE: Whether Doc. #1-1 fails to state a plausible claim for relief

ARGUMENT: First, we must consider FRCP Rule 8 which instructs as follows:

All pleadings shall be so construed as to do substantial justice; no technical forms of pleading are required, and a pleading shall contain a short and plain statement of the claim showing pleader is entitled to relief.   [ It may be that to snuff-out even a conceivable, if not plausible, theory, without giving parties a chance to come forth with

1

the extensive factual and legal material that is out there(and would not belong in a pleading), is inconsistent with Constitutional due process. ]

Merriam-Webster's on-line dictionary defines "plausible" as "possibly true, believable or realistic", and as being "superficially fair, reasonable, or reliable but often specious, appearing worthy of relief". Recognizing that even "specious" claims can appear worthy of relief.

If the Court does nothing but take judicial notice of Ca. Elections Code 13112, [which states that: "The Secretary of State shall conduct a drawing of the letters of the alphabet, the result of which shall be known as a randomized alphabet", the statute going on to mandate use of the random alphabet in all California elections, with further rotation of names within Assembly Districts.], it would have this view of the elected legislature for the nation's largest state and that alone would be strong enough to graduate plaintiff allegations from 'conceivable' to 'plausible'.

If Mr. Schaefer was seeking a judicial determination of fact that some citizens have found conceivable, such as finding that the Earth is flat or that political unknowns have a chance to become President, then the plausibility attack on his Pro Bono effort to save-the-world would have inhanced standing and acceptance.

This state's Supreme Court in 1867, in State of Nevada v. Milliam, 3 Nev 409, opined that:

"we have copied most of our Constitution and most our laws from the sister-state of California."

This does not impose any burden on the federal judiciary but should discourage labeling as merely 'conceivable' a randomizing of the alphabet for electoral balloting consistent with Equal Protection recognized by our sister-state(Ca. Election Code 13112)

2

The recommendation depends heavily on <u>Ashcroft v. Iqbal</u>, a 5-4 decision of our highest court, which like it or not is the law of the land. But we must note that it arose out of the 9-11 devastation of New York City and raised the very sensitive issue of whether **U.S. officials** can be held liable for acts of their subordinates. We know that subordinates can be held liable(reference the Nuremberg trials arising from Hitler's administration). It is important to give at least conditional immunity to senior decider from acts of subordinates or few would accept the job. Iqbal was a necessary political case and very technical; discussing abtract issues such as "penological intent".

"A claim has 'facial plausibility' when content allows court to draw reasonable inference that defendant is liable for misconduct". <u>Iqbal</u>, supra. No liability was found. In our case, all any Court has to do to recognize prejudice in favor of the "Aaron Aardvark" candidates(any candidate with a low-alphabet name) is to look at list of Legislators in alphabet-states or in the Congress, and note how many ABC names pop-up, as opposed to other random alphabet letters. Or if an old "telephone book" can be found, look at listings for any popular business and you will find AAA Plumbing, AA Roofing, the 'real world' <u>clamoring to be the "first name" in the buyers mind.</u> As a nation we can put up with the commercial market place recognizing advantages inuring to creative-merchants, those with mid-alphabet names but who chose <u>some form of "A"</u> for their commercial name, but in dealing with the public franchise and how we elect our 'deciders' (legislators, Sheriffs, District Attorneys, Regents, etc.), we must strive for a 'level playing field', and it is estimated that only 7 states still follow the "alphabet" in listing public candidates, other list in order of filing(causing filers to often camp-out till election office opens). In the old days, California permitted every incumbent to be listed First, with

3

other candidates in alphabetical order. That ended with Gould v. Gubb, 14 Cal3d 661(1975), Justice Tobriner finding that it was unconstitutional to have an election procedure which automatically afords an incumbent a top position on the ballot. The superior court findint that "a significant advantage" accrues to such candidate. And that election officials "bore a constitutional duty to prepare ballots in a manner determinated by rotation, lottery, or some other constitutional process free from arbitrary prefrence. The Court noting that "several of the experts testified that a significant advantage as to ballot placement accured to the beneficiares in virturally all elections, with the possible exception of elections for the President of the United States, or perhaps a state governor." The Gould Court, citing Knoll v. Davidson, 1974, 12 Cal 3d 335, 345; 525 P2d 1273, and five other state and federal cases, continued:

"The classification scheme in issue here directly relates to the electoral process, and in recent years both this court and the United States Supreme Court have had frequent occasion to reiterate that the 'fundamental' nature o the right to vote and the importance of preserving the integrity of the franchise require that the judiciary give close scrutiny to the laws imposing unequal burdens or granting unequal advanages in this realm."

We are influenced by 'the strong judicial preference for deciding cases on the merits rather than on procedural grounds'. Schwab v. Bullocks, Inc., (9th Cir. 1974), 508 F2d 353, 355. "whenevver it is reasonably possible, cases should be decided on the merits". Patapoff v. Vollstedt's Inc. (9th Cir. 1979) 267 F2d 863.

Speaking on the 50th anniversary of the FRCP in 1988, U.S. District Judge Walk Weinstein bemoaned the early skirmishes in the "anti-access movement" under the "disingenuous guises" of 'administrative efficiency' and "a purported litigation explosion". He noted negative impact of FRCP 11 on civil rights plaintiffs, heightened pleading requirements that were green-lighting the early dismissal of cases. US District Court

4

Robert Carter shared the concern that efficiency was being used "as a smokescreen to hide a substantive bias against cases [particularly civil rights claims] that efficiency proponents do not like.

Iqbal is a wake-up call, as to deciding whether the Complaint can proceed; given that the Court has its parameters defined: In Iqbal, the court reinterated the 'plausibility standard" and held that the evaluation of the plausibility of complaiants was "context-specific task" in which judges were to "draw on their judicial experience and **common sense**(emphasis added). Unless this Court, drawing on common sense, can knowingly conclude that there is no advantage to the low-alphabet candidates in an election, it must green-light the case.

Plaintiff's research, including exhibits for which we ask Judicial Notice [request being filed with this Objection], appear to indicate first-listing advantages of 5% to 20%, and such being highest in low-profile elections, like City Council and state legislatures, and less high-profile elections, such as Governor, President, [where there is enhightened debate, educational material sent to voters.] Plaintiff in the 1970s had a trial on unfairness of the alphabet for purposes of ballot listing, in San Diego Superior Court, had chairman of both Democratic and Republican parties, San Diego County, and a professor at San Diego State University all opine that they perceived an advantage and that they deemed it prejudicial to mid and lower-list candidates. The Judge ordered Registrar to draw names out of a hat, upon notice to all candidates and the public. Several copy-cat cases followed in Los Angeles, based on pleadings filed by plaintiff as counsel for a county supervisor candidate in the San Diego case, and the Legislator in the next session fixed the problem with Elections Code 13112. Schaefer next asked the Federal Court to

kill residency requirements in all 50 states, for federal candidates, and was successful. Please see Schaefer v. Townsend, Registrar of Voter; 215 F3d 1031.  This petition is not just a voice crying in the desert, it is a real, scholarly, attack on fundemental fairness, as to an issues upon which reasonable men and women cannot differ, is an issue of law to be soon resolved by summary judgment.

WHEREFORE, plaintiff prays for Order sustaining this objection and ordering that the case proceed in ordinary course.

(1) Plaintiff further requests Order determining if the individual named-candidates are, or are not, necessary parties and <u>dismissal, sua sponte,</u> if found not-necessary parties. There may be candidates in addition to plaintiff, who will be filing prior to March 14, 2016 deadline; thus to deemed such mere-candidates as necessary parties would require Amended pleading, when in reality all candidates, announced and unannounced, and all voters, are affected by the relief sought herein, and it appears less than fair to include four of these candidates-or-potential candidates, and not all affected parties.  Plaintiff submits that they are not required to be parties to this action but be welcome to intervene or amicus. And that any decision affecting candidates also affects rights of all voters.

(2) If the Court dismisses parties Kihuen, Lee, Oceguera, Flores, plaintiff will give each mailed notice of the action and copy of this pleading so they will be on-Notice. And follow up with any new Congressional District 4 Democratic Candidates.

If the court does not, plaintiff will  promptly amend his complaint when filing date passes to add any additional candidates, if any,  filing for said Democratic Nomination.

Dated: February 19, 2016                     Respectfully submitted,
                                             *M Schaefer*
                                             MICHAEL SCHAEFER
                                             Plaintiff Pro Se



9509 Sandhill Dr
LV NV 89134

Clerk
US District Court
333 S. LV Blvd.
LV, NV, 89101