MICHAEL SCHAEFER
9509 Sundial Dr.
Las Vegas, NV 89134
Tel. 702-466-5407
Plaintiff Pro Se

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

MICHAEL SCHAEFER,
    Plaintiff

Case No. 2:16-cv-4-JAD-VCF

v.

BARBARA CEGAVSKY, Secretary of State, et al.,
    Defendants

**REQUEST FOR JUDICIAL NOTICE**

---

COMES NOW Plaintiff Michael Schaefer, Pro Se, pursuant to Federal Rules of Evidence, Rule 201, requesting judicial notice of the following documents all of public record; the court may take judicial notice at any stage of the proceedings. Rule 201(d).

1. California Elections Code sec. 13112(2 pp)

2. Ballot used in City Council, District 4, elections, City of Los Angeles
   Results of said election showing first two of 14 candidates were winners
   (California lists candidates pursuant to a randomized alphabet)

3. British Broadcasting Corporation blog indicating the issue is International.

4. Northwestern University's Management School publication on issue(2pp)

5. Stanford University Professor of Political Science published NYT opinion

6. Recent Blog discussion of issue.

Dated: February 19, 2016

Respectfully submitted,
Michael Schaefer
Plaintiff Pro Se

13112. The Secretary of State shall conduct a drawing of the letters of the alphabet, the result of which shall be known as a randomized alphabet. The procedure shall be as follows:

  (a) Each letter of the alphabet shall be written on a separate slip of paper, each of which shall be folded and inserted into a capsule. Each capsule shall be opaque and of uniform weight, color, size, shape, and texture. The capsules shall be placed in a container, which shall be shaken vigorously in order to mix the capsules thoroughly. The container then shall be opened and the capsules removed at random one at a time. As each is removed, it shall be opened and the letter on the slip of paper read aloud and written down. The resulting random order of letters constitutes the randomized alphabet, which is to be used in the same manner as the conventional alphabet in determining the order of all candidates in all elections. For example, if two candidates with the surnames Campbell and Carlson are running for the same office, their order on the ballot will depend on the order in which the letters M and R were drawn in the randomized alphabet drawing.

  (b) (1) There shall be six drawings, three in each even-numbered year and three in each odd-numbered year. Each drawing shall be held at 11 a.m. on the date specified in this subdivision. The results of each drawing shall be mailed immediately to each county elections official responsible for conducting an election to which the drawing is applicable, who shall use it in determining the order on the ballot of the names of the candidates for office.

  (A) The first drawing under this subdivision shall take place on the 82nd day before the April general law city elections of an even-numbered year, and shall apply to those elections and any other elections held at the same time.

  (B) The second drawing under this subdivision shall take place on the 82nd day before the direct primary of an even-numbered year, and shall apply to all candidates on the ballot in that election.

  (C) (i) The third drawing under this subdivision shall take place on the 82nd day before the November general election of an even-numbered year, and shall apply to all candidates on the ballot in the November general election.

  (ii) In the case of the primary election and the November general election, the Secretary of State shall certify and transmit to each county elections official the order in which the names of federal and state candidates, with the exception of candidates for State Senate and Assembly, shall appear on the ballot. The elections official shall determine the order on the ballot of all other candidates using the appropriate randomized alphabet for that purpose.



(D) The fourth drawing under this subdivision shall take place on the 82nd day before the March general law city elections of each odd-numbered year, and shall apply to those elections and any other elections held at the same time.

(E) The fifth drawing under this subdivision shall take place on the 82nd day before the first Tuesday after the first Monday in June of each odd-numbered year, and shall apply to all candidates on the ballot in the elections held on that date.

(F) The sixth drawing under this subdivision shall take place on the 82nd day before the first Tuesday after the first Monday in November of the odd-numbered year, and shall apply to all candidates on the ballot in the elections held on that date.

(2) In the event there is to be an election of candidates to a special district, school district, charter city, or other local government body at the same time as one of the five major election dates specified in subparagraphs (A) to (F), inclusive, and the last possible day to file nomination papers for the local election would occur after the date of the drawing for the major election date, the procedure set forth in Section 13113 shall apply.

(c) Each randomized alphabet drawing shall be open to the public. At least 10 days prior to a drawing, the Secretary of State shall notify the news media and other interested parties of the date, time, and place of the drawing. The president of each statewide association of local officials with responsibilities for conducting elections shall be invited by the Secretary of State to attend each drawing or send a representative. The state chairman of each qualified political party shall be invited to attend or send a representative in the case of drawings held to determine the order of candidates on the primary election ballot, the November general election ballot, or a special election ballot as provided for in subdivision (d).

(d) In the case of any special election for State Assembly, State Senate, or Representative in Congress, on the first weekday after the close of filing of nomination papers for the office, the Secretary of State shall conduct a public drawing to produce a randomized alphabet in the same manner as provided for in subdivisions (a) and (c). The resulting randomized alphabet shall be used for determining the order on the ballot of the candidates in both the primary election for the special election and in the special election.

**2**
204

**CITY OF LOS ANGELES MUNICIPAL BALLOT**
**PRIMARY NOMINATING ELECTION**
**March 3, 2015**

| MEMBER OF THE CITY COUNCIL, DISTRICT 4 | Vote for One |
|---|---|
| DAVID RYU — Community Health Director | 33 |
| CAROLYN RAMSAY — Councilmember's Staff Chief | 34 |
| JOAN PELICO — Councilmember's Staff Chief | 35 |
| TEDDY DAVIS — Attorney/Educator | 36 |
| STEP JONES — Vapor Advocate | 37 |
| ROSTOM "ROSS" SARKISSIAN — Small Business Owner | 38 |
| MIKE SCHAEFER — Public Interest Advocate | 39 |
| WALLY KNOX — Attorney | 40 |
| TOMÁS O'GRADY — Nonprofit Director/Entrepreneur | 41 |
| JAY BEEBER — Community Advocate/Businessman | 42 |
| TARA BANNISTER — Association Director/Educator | 43 |
| SHEILA IRANI — Businesswoman/Community Leader | 44 |
| FRED MARISCAL — Marketing Executive | 45 |
| STEVE VERES — Trustee, Los Angeles Colleges | 46 |

**Possible Term of 5½ Years**

The proposed measure(s) to change the City of Los Angeles' municipal elections to June and November of even-numbered years starting in 2020 is also on this ballot. If this measure passes, candidates elected in 2015 and 2017 will be elected for a term of 5½ years to align terms with the new election dates.

SB204-E

5

#2

Precincts reporting: 113 / 113 (100.00%)

| Name | Votes | Pct. |
|---|---|---|
| Carolyn Ramsay | 2,911 | 15.32% |
| David Ryu | 2,776 | 14.61% |
| Tomas O'Grady | 2,715 | 14.29% |
| Wally Knox | 2,086 | 10.98% |
| Teddy Davis | 2,079 | 10.94% |
| Steve Veres | 1,886 | 9.93% |
| Sheila Irani | 1,443 | 7.59% |
| Joan Pelico | 1,093 | 5.75% |
| Jay Beeber | 862 | 4.53% |
| Sarkissian | | |
| Tara Bannister | 237 | 1.24% |
| Mike Schaefer | 227 | 1.19% |
| Fred Mariscal | 144 | 0.75% |
| Step Jones | 92 | 0.48% |



**Putting names on ballot papers in alphabetical order creates a strange statistical anomaly in local elections, writes Anthony Reuben.**

A paper published in the journal **Parliamentary Affairs** analysed local elections since 1973 and found that in the 2011 elections across the English shire districts and metropolitan boroughs, 161 candidates were elected purely because their names were high in the alphabet and so appeared near the top of the ballot paper.

This effect is apparently greatest in what the authors call "low information elections" - where voters are not able or willing to find out much about those standing - and in elections in which each party has several candidates, so the local elections are a perfect example.

It does appear that if a party is putting up three candidates for an election and only two of them get elected, the ones who win tend to be the ones whose names appear first in the alphabet.

In elections to the European Parliament, candidates are put in alphabetical order according to the name of their party. In many countries, the names of candidates are put in a random order on the ballot paper.

And there are those who argue that alphabetical advantage goes well beyond local elections.

A **paper from 2005** found that academic economists were more likely to get jobs at prestigious universities and even win Nobel Prizes if their names were higher up the alphabet, because academic papers tend to list authors in alphabetical order. That article was co-written by a Professor Yariv, who no doubt feels strongly about the issue.

#3

# Kellogg School of Management at Northwestern University

# First Among Equals?

OCT. 1, 2010

**Prime ballot position improves a candidate's chances of winning office**

Based on the research of Marc Meredith and

Specialists in the mechanics of voting have long recognized that the order in which candidates' names appear on a ballot influences voters' decisions. Typically, candidates listed at the top of a ballot earn a greater share of the vote than they would receive in any other position, regardless of their policies and personalities. Now research on voting patterns in local state elections coauthored by a Kellogg School researcher has taken the issue a stage further. It concludes that the first listing on the ballot also increases a candidate's chances of actually winning office—by almost five percentage points.

The research, by Yuval Salant, assistant professor of managerial economics & decision sciences at Kellogg, and Marc Meredith, an assistant professor at the University of Pennsylvania, also examined why voters show a preference for candidates in the first position on the ballot. The pair have not found a complete answer to that question yet. But they conclude that the reason most commonly given for voters' preference—choosing the first name that appeals to the voter as he or she reads down the ballot—does not fully account for the result.

Salant's research focuses on framing effects—how presentation can influence a person's choice in such situations as the order of products shown to online shoppers and the precise placement of items in supermarkets. "There's a large experimental and empirical literature on that, but my focus is mainly on the theory behind framing effects," Salant explains.

**A Natural Experiment**
Salant and Meredith sought to measure the impact of framing on winning office rather than vote share, and in the process "collected an entirely new dataset," Salant recounts. He and Meredith based it on the results of elections to city councils and school boards in California. Why California? "We were looking for a natural experiment: a situation in which the order of candidates on the ballot is determined randomly," Salant explains. The Golden State satisfied that requirement, because it has a unique method of assigning ballot positions to ensure that candidates whose surnames start with the letter "A" do not dominate the top of the ballot.

"After the California local election entry-deadline has passed, the California Secretary of State draws a random order of the alphabet according to which candidates are listed on all ballots," the researchers' paper states. Because candidates positions' on the ballot are quasi-random, Salant and Meredith expected the distribution of candidates' characteristics and the number of winners to be similar for all ballot positions. They then "counted how many winners came from the first position and calculated the expected number from that position, and compared them using statistical analysis," Salant says.

#4

### Clear-cut Results

The results were clear-cut. "In one out of ten elections, the candidate listed first won just because he was listed first," Salant recalls. "The first candidate advantage," the paper notes, "comes primarily at the expense of candidates listed in the median ballot position who are 2.5 percentage points less likely to win office than expected absent order effects" (Figure 1). The first candidate advantage was "similar in city council and in school board elections, in races with and without an open seat, and in races consolidated and not consolidated with statewide general elections." In addition, the percentages of winners from specific positions remained similar whether the elections were designed to produce one or more winners.

In more important elections such as those for governors, senators, and the presidency, ballot position may not have as much of an impact. "I would expect that the effect is smaller the more important the elections are," Salant says. "But the results will still be there, particularly in close races. However, we don't have enough data to confirm that."

Nor did the project produce enough information to determine just why ballot order has such a significant effect on winning office. A popular explanation is that voters indulge in "satisficing": they evaluate the candidates as they scroll down the ballot and choose the first one that meets their basic criteria, instead of selecting the best candidate from the entire list. However, Salant and Meredith caution against over simplified explanations. Careful analysis of the California results indicates that satisficing does not account for the complete first candidate advantage. "There is something else going on here, but we don't have enough data to determine what it is," Salant says.

### Practical Considerations

Overseas authorities have already taken practical advantage of ballot order. Salant and Meredith quote the example from Russia's regional parliamentary elections in March 2007. In a supposedly random allocation of parties to ballot positions in these elections, the then-President Vladimir Putin's Unified Russia party appeared in the first ballot position in eight of the fourteen regions, a full six regions more than expected under a random allocation. "This finding underscores the importance of ensuring that any policies done to mitigate order effects, like randomization or rotation, are done so in a fair manner," they conclude.

Nevertheless, their research shows that authentic randomizing of ballot order can improve the fairness of elections. Yet is the California system fair enough? An ideal system, Salant says, would show each individual voter a randomized ballot order. But that, "would be very costly," he adds. Electronic voting could help reduce the financial cost of such a system, but with randomization "voters may still get confused, which is the other source of cost," he says.

Voters are not the only ones who can benefit from this research. "Details that seem irrelevant may affect the way we behave in other settings, like the supermarket, buying online, and choosing a retirement plan," Salant says. "As individuals, we should be alert to order and other framing effects when making decisions."

HOME PAGE   MY TIMES   TODAY'S PAPER   VIDEO   MOST POPULAR   TIMES TOPICS         SUBSCRIBE NOW   Log In   Register Now

# The New York Times

## Opinion

○ Opinion  ○ All NYT   Search

WORLD   U.S.   N.Y./REGION   BUSINESS   TECHNOLOGY   SCIENCE   HEALTH   SPORTS   OPINION   ARTS   STYLE   TRAVEL   JOBS   REAL ESTATE   AUTOS

EDITORIALS   COLUMNISTS   CONTRIBUTORS   LETTERS   N.Y./REGION OPINIONS   READERS' OPINIONS   THE PUBLIC EDITOR

OP-ED CONTRIBUTOR

### In the Voting Booth, Bias Starts at the Top

By JON A. KROSNICK
Published: November 4, 2006

Stanford, Calif.

More Articles in Opinion »

SIGN IN TO
E-MAIL THIS
PRINT

PEOPLE who are first in line at a movie know they have the best chance of getting the seats they want. When students answer multiple-choice questions incorrectly, they usually choose one of the first options offered. When people taste-test four brands of beer, they tend to prefer the one they try first.

And so it is with voting. Candidates listed first on the ballot get about two percentage points more votes on average than they would have if they had been listed later (flipping a 49 to 51 defeat into a 51 to 49 victory). In fact, in about half the races I have studied, the advantage of first place is even bigger — certainly big enough to win some elections these days.

When do voters gravitate to the first name they see? Based on the more than 100 elections in Ohio that a colleague and I studied, it's when voters know little or nothing about the candidates, or when the candidates' party affiliations are not listed on the ballot, or when the incumbent (whom voters typically know at least somewhat) is not running for re-election. Thus, some voters apparently feel an obligation or desire to vote even when they have no basis for choosing a candidate and are drawn to the first name they read.

But even in well-publicized major national races, being listed first can help. Some people walk into the voting booth feeling ambivalent, and in the end just grab the name on top so they can get out of the booth.

How do we know this? Well, consider this: In California's 80 Assembly districts, candidate name order is randomly assigned. In 1996, Bill Clinton's vote tally was 4 percentage points higher in the Assembly districts where he was listed first than in the ones where he was listed last — a difference that persisted even after we took into account pre-existing Democratic registration levels in the districts.

In 2000, George W. Bush's vote tally was 9 percentage points higher in the districts where he was listed first than in the districts where he was listed last — again, persisting with registration taken into account.

Of course, these issues are not confined to California. My research team spent a year reading statutes and contacting secretaries of state and county boards of elections to learn about their naming procedures. We found an array of idiosyncratic — and disturbing — rules governing the placement of names on the ballot.

In Florida, for instance, candidates from the governor's party get top billing, which is why in 2000 and 2004 George W. Bush was listed first on every ballot. (His brother, Jeb, was governor.) In Delaware and Tennessee, by contrast, Democrats always come first.

Some states — like Alabama and North Carolina — list candidates alphabetically by party (meaning that Democrats always precede Republicans); others, like Hawaii and Vermont, list candidates alphabetically by name. Massachusetts always puts incumbents first; others simply allow elections officials to list names in whatever order they please.

#5

(Surprise: research by Robert Darcy of Oklahoma State University shows that when given the choice, election officials tend to list their own party's candidates first.)

Perhaps the most endearing procedure is in Minnesota, where candidates from the party that received the fewest votes in the most recent election are listed first.

Thankfully, the question of bias and name placement on ballots is finally beginning to get the attention it deserves. In August, the Supreme Court of New Hampshire declared unconstitutional the state's procedure for listing first the names of candidates whose party had received the most votes in the preceding state general election.

Other states should solve this problem — particularly because an effective technique for name placement exists.

Ohio uses a system that is the model of fairness and accountability. Candidate names are rotated from precinct to precinct, so every candidate is listed first an equal number of times, and observers can inspect ballots on Election Day to be sure the rotation was done properly. Idaho, North Dakota, Wyoming and a few other states use versions of this system.

That's not to say that Ohio executes this system perfectly. For example, in 2004, with the permission of Secretary of State Kenneth Blackwell, a Republican, many Ohio counties ignored the rotation law and listed John Kerry last twice as often as the law allowed. And also with Mr. Blackwell's approval, Mahoning County's touch-screen voting machines supposedly rotated candidate name order from voter to voter.

For too long, the placement of names on ballots has been in the shadows. In fact, the government commissions formed since 2000 to improve election procedures barely mention candidate name order. And while it's too late to do anything about name placement for Tuesday's elections, we can eliminate this brand of bias in the 2008 elections.

We should acknowledge the wisdom of the New Hampshire Supreme Court and adopt the rotating name-ordering procedures throughout the country. When it comes to our ballots, and our elections, integrity has to come first on the list.

*Jon A. Krosnick is a professor of communication, political science and psychology at Stanford.*

More Articles in Opinion »

**Related Articles**
U.S. Investigates Voting Machines' Venezuela Ties (October 29, 2006)
THE 2006 CAMPAIGN; New Laws and Machines May Spell Voting Woes (October 19, 2006)
THE 2006 CAMPAIGN; Bill Would Reimburse States For Printing Alternate Ballots (September 27, 2006)
Iraq War Veteran Wins Congressional Primary (March 23, 2006)

**Related Searches**
Elections
Voting Machines
Voter Registration and Requirements
Krosnick, Jon A

Home  World  U.S.  N.Y. / Region  Business  Technology  Science  Health  Sports  Opinion  Arts  Style  Travel  Job Market  Real Estate  Automobiles  Back to Top

Copyright 2006 The New York Times Company  Privacy Policy  Search  Corrections  RSS  First Look  Help  Contact Us  Work for Us  Site Map

http://www.nytimes.com/2006/11/04/opinion/04krosnick.html?_r=0    1/2/2016

# Alphabetically ordered ballots make elections less fair and distort the composition of American legislatures

Posted on **June 9, 2015** by **jOSE** —

*By Blog Admin*

*It is relatively well known that candidates who are first on the ballot tend to enjoy a vote advantage compared to those whose names begin with letters later in the alphabet. But how much of a difference has this made to election results? In new research which analyzes the names of members of Congress from 1949 to 2012 and state legislators from 1967 to 2010,* **Barry Edwards** *finds that alphabetical ballot lists account for the results in 10 Congressional seats and more than 70 seats in state legislatures. He argues that alphabetically ordered ballots undermine the principle of fair elections, and that reform of ballot order rules is needed.*

Conventional political wisdom suggests the candidate listed first on a ballot enjoys a slight windfall of votes cast by those who don't know or care enough to consider all their options. By focusing on particular elections, researchers have neglected to consider the broad consequences of arbitrary ballot ordering rules on legislative representation. To evaluate the substantive significance of ballot order rules, I compare the legislators of states that alphabetically order ballots to legislators elected by states that randomize or rotate ballot order. My research suggests that the seemingly innocuous choice of some states to alphabetize ballots has significantly altered the composition of state legislatures and even Congress.

Scholarly interest in how ballots are designed and organized predates the explosion of interest in the subject generated by the 2000 Presidential Election. Most studies suggest the first candidate listed on a ballot enjoys an above average number of votes in certain elections. The less that voters know or care about the election, the greater the windfall of votes to the first listed candidate. Think how often you click the first link in Google search results and don't bother to consider all your options. However, when the stakes are relatively high, as in partisan legislative elections, scholars suggest ballot order has little or no influence on voters. Accordingly, some have concluded that the distortions induced by ballot order are confined to low-level elections and do not affect the general political landscape. I was sceptical of this sanguine assessment of ballot order effects and looked at the impact of alphabetically ordering ballots on high-level legislative offices. I found that the practice of alphabetically ordering ballots, used in a number of states, significantly distorts the composition of their state legislatures and congressional delegations in favour of representatives with early-alphabet names.

**Early Advantages Persist**

I suspected that relatively small advantages to early-alphabet candidates in low-profile elections might distort the political process generally because in highly competitive endeavours, slight advantages, particularly those enjoyed

#6

early in a career, can set some on the road to success and stunt others' development. We've seen how small advantages in youth sports alter the composition of professional leagues years later. Malcolm Gladwell's (2008) popular book *Outliers: The Story of Success* highlighted how calendar cut-off dates in youth hockey leagues affect who later plays professional hockey. January babies are not inherently better hockey players, but they are bigger, faster, and more coordinated when they start playing hockey (they are nearly 20 percent older than December babies in a league for five-year-olds with a Jan. 1st cut-off date). Children born early in the year enjoy more opportunities to develop their skills and progress from one level to the next so the small, early advantage persists. Could the same thing happen in politics? Perhaps alphabetically ordering ballots gives certain candidates an edge at the beginning of their careers which gives them greater opportunities to advance to higher and higher offices. If so, we would expect legislators elected in states that alphabetically order ballots to have more early-alphabet names than those elected by states which utilize ballot ordering methods that neutralize name advantages.

My research takes advantage of the fact that states have used different methods of ordering their ballots. I identified sixteen states that have ordered primary election ballots alphabetically (some of these states alphabetize ballots in other types of elections as well) and twenty states that have ordered by random assignment or by rotating multiple versions of their ballots among precincts. I use legislators elected by states that rotate or randomize the order of candidates on ballots as a comparison group because these practices neutralize potential name advantages. (I don't compare legislators' names to the distribution of names in the general population because there may be some general advantages to early alphabet names in all states).

I analyze the names of members of the 81st to 112th Congresses (1949 – 2012) elected by these two sets of states as well as the state legislators they elected from 1967 to 2010. To test whether alphabetizing ballots distorts who gets elected to these high offices, I use a statistical method that tests whether two samples have the same distribution (the Kolmogorov-Smirnov two-sample test). To conduct the test, I compare the proportions of legislators who have last names before different points in alphabetical order and see whether the different exceeds a pre-determined critical value. Plotting these distributions helps us perceive both the magnitude and direction of differences in our observations.

**Figure 1 – Comparison of legislators who have last names before different points of alphabetical order**

Figure 1 above compares the congressional delegations and state legislatures of states that alphabetically order ballots to those of states that randomize or rotate the order of candidates on their ballots. With respect to Congress, the maximum distance between distributions is .094 (which occurs at "Mi"). For state legislatures, the gap between distributions reaches .045 (at "Go"). Both of these differences exceed the critical values for 99 percent confidence so one would reject the hypothesis that these observations have the same distribution.

The aggregate impact of alphabetically ordering ballots is surprisingly large. The differences observed in congressional delegations and state legislatures equates to a shift of ten seats in Congress and seventy-one seats in state legislatures in favor of politicians with early-alphabet surnames compared to name-neutral ballot ordering rules. Although arbitrary ballot ordering rules do not intentionally discriminate against a protected class, they compare in magnitude to the effect of poll taxes and literacy tests used in a number of states until the 1960s to supress African American representation. If one assumes that other static ballot ordering methods affect elections like alphabetic ordering affects representation in states studied here, the overall impact of ballot ordering rules on political representation may be double that of alphabetic ordering alone.

**Assessing Alternative Explanations**

It is important to consider whether something other than using different ballot ordering methods causes these differences. Accordingly, in my research I conduct a number of additional tests to assess alternative explanations and check the robustness of my findings:

- Within-State Comparisons. Because some states started or stopped alphabetically order ballots during the time frame of this study, we can make some before and after comparisons. Evidence from Florida, Indiana, New Hampshire, and Rhode Island supports the main findings.
- Controlling for Demographic Differences. To assess the possibility that differences in state demographics, rather than ballot ordering rules, explains the main findings, I separate the sample of legislators into subsamples of different racial and ethnic groups. I find that the Hispanic, African American, and white state legislators elected in states that alphabetically order ballots have earlier alphabet names than their counterparts in states that randomize or rotate ballot order.
- Controlling for Other Differences. I compare other subsamples of state legislators and find the same name-differences among legislators elected to open seats (a control for incumbency advantages), Republicans, Democrats, Senators, and Representatives.
- Randomization Inference Testing. Finally, I conduct a randomization inference test to evaluate possibility some other unspecified variable accounts for differences documented in this research. The p-value of this randomization inference test equals 0.004. Other groupings of states (based on unspecified variables) are extremely unlikely to produce the differences in representation observed here.

**The Need for Ballot Reform**

Based on my research, I believe that ballot order affects preliminary contests like elections to minor offices and primary elections which, in turn, affect general election outcomes and the composition of state and federal legislatures. Alphabetically ordered ballots may create a slight advantage for candidates with early alphabet names at a formative time in their political careers in much the same way as a January 1st cut-off date for registering in youth hockey leagues gives rise to a relative age advantage for children born early in the calendar year. My results challenge the view that ballot ordering rules are innocuous administrative details. I estimate that the distortion resulting from alphabetic ordering in the United States is roughly equivalent to the representation of a medium-sized state or the effect of literacy tests and other historic barriers to voter registration on African American representation.

Election rules that eliminate positional advantages, such as randomizing or rotating ballot order, may be more complicated and costly to administer than simply listing candidates in alphabetical order, but this research suggests that states which alphabetically ordered ballots may not be represented by legislators who enjoy the most support in the electorate. The practice may cause less deserving candidates to win office, leaving these states worse off. Additionally, in other research, I have found that alphabetically ordering ballots puts particular racial and ethnic groups, notable Asian-Americans, at a significance disadvantage. My research underscores the need to reform ballot order rules in order to conduct fair elections. Given the magnitude and complexity of policy issues on both the state and federal levels, we should be wary of arbitrary rules for ordering ballots that interfere with the election of the best qualified candidates for public office.

*Featured image credit: liz west (Flickr, CC-BY-2.0)*